UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| COY G. COX, JR., | CIVIL ACTION NO. 7:15-80-KKC-HAI |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| SPECIALTY VEHICLE SOLUTIONS LLC, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's motion to alter or amend the Court's judgment. Plaintiff Coy G. Cox, Jr. originally brought suit in state court, and Defendant Specialty Vehicle Solutions LLC removed the action to this Court. (DE 1.) The Court granted Defendant's motions to dismiss both Plaintiff's original complaint and a subsequent complaint that Plaintiff filed later. (DE 25.) The Court denied Plaintiff's subsequent motion to alter or amend the Court's judgment. (DE 36.) The United States Court of Appeals for the Sixth Circuit then vacated the dismissal and remanded the case for further proceedings. (DE 39.) After the Court granted Defendant's motion for summary judgment (DE 54; DE 55), Plaintiff filed this motion to alter or amend that judgment (DE 56). For the reasons stated below, the Court denies Plaintiff's motion. Because the Court also finds that a hearing would not aid in the resolution of the issues presented, it denies Plaintiff's request for oral argument.

1

## Background

On February 28, 2014, Plaintiff, on assignment as a federal task force officer with the Internal Revenue Service, was conducting surveillance inside a Ford van that had been specially modified by Defendant. (DE 1-1 at 2; DE 14 at 1; DE 49 at 1.) Plaintiff alleges that a battery installed in the van began "to emit and spew noxious and deadly gases, liquids, and vapors into the enclosed van compartment where users, including Plaintiff, were to work." (DE 1-1 at 4.) Plaintiff alleges that as a result of exposure to "harmful substances for a significant amount of time… he suffered severe bodily injuries." (DE 1-1 at 4.)

On October 20, 2014, Defendant filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. (DE 10 at 2.) Defendant, however, did not list Plaintiff as a creditor, nor did it serve him with notice of the bankruptcy petition. (DE 53 at 1.)[1] On February 23, 2015, and apparently without knowledge of Defendant's bankruptcy, Plaintiff filed suit in Letcher County Circuit Court. (DE 1-1; DE 49 at 2.) The complaint asserts claims of strict liability, negligence, and fraud against Defendant. (DE 1-1.) Defendant then entered a notice of its bankruptcy proceeding – and the accompanying automatic stay – into the state court record. (DE 47 at 12-13.) As the Sixth Circuit would later summarize in the appeal in this case –

> With certain exceptions not relevant here, "[a]n entity's act of filing a petition for bankruptcy operates as a 'stay' of actions that could have been filed against the entity to recover claims." *In re Glob. Technovations Inc.*, 694 F.3d 705, 711 (6th Cir. 2012) (citing 11 U.S.C. § 362(a)). This "fundamental protection," *Easley* [*v. Pettibone Mich. Corp.*], 990 F.2d [905,] 910 [1993], gives debtors a "breathing spell" to reorganize their financial affairs, *In re Robinson*, 764 F.3d 554, 559 (6th Cir. 2014) (citation and internal quotation marks omitted). Thus, "an action taken against a debtor during the duration of the

---

[1] Defendant claims that it believed that Plaintiff had dropped his claim after an inspection of the van by his attorneys revealed no irregularities with the batteries. *Cox v. Specialty Vehicle Sols., LLC*, 715 F. App'x 443, 444 (6th Cir. 2017).

automatic stay" is "invalid" – it is "without legal force or effect."
*Easley*, 990 F.2d at 909.
*Cox v. Specialty Vehicle Sols., LLC*, 715 F. App'x 443, 447 (6th Cir. 2017).

Plaintiff sought relief from the automatic stay and hired Warren Levy, a New Jersey bankruptcy attorney. (DE 48 at 3-4.) On June 2, 2015, Mr. Levy filed a motion for stay relief on behalf of Plaintiff. (DE 10-4.) The motion indicated that Plaintiff was seeking to "institute or resume" his state civil suit against Defendant. (DE 53 at 10.) Of note, Mr. Levy's notice of the motion for stay relief described Plaintiff's suit as pre-petition in nature. (DE 10-4 at 1.) This was incorrect, as Plaintiff did not file his state civil suit until months after Defendant's bankruptcy petition.

Defendant objected to Plaintiff's motion for stay relief through its own bankruptcy attorney, Jennifer McEntee. (DE 47 at 22-24.) Ms. McEntee argued that Plaintiff's motion was both vague and an improper attempt to litigate a claim against a debtor currently in Chapter 11 bankruptcy proceedings. (DE 47 at 23.) Ms. McEntee did indicate, however, that "an amicable resolution could possibly be reached if [Cox] agreed to limit the relief requested in [his] proposed order to the extent of the insurance policy." (DE 47 at 24.) Mr. Levy forwarded Defendant's objection to Plaintiff's personal injury attorneys, who then passed along the message to their client. (DE 47 at 3.) Levi James Daly, one of Plaintiff's personal injury attorneys, attests that on June 25, 2015, Plaintiff confirmed that he was willing to limit his recovery to the extent of Defendant's insurance coverage. (DE 47 at 3.) Mr. Daly advised Mr. Levy of Plaintiff's consent and instructed him to continue negotiating with Defendant's bankruptcy counsel. (DE 47 at 3-4.) The parties eventually agreed on a draft stay relief order. Per Defendant's request, the term "institute" was removed from the proposed order, allowing Plaintiff only to "resume and prosecute" his state civil suit. (DE 46 at 2; DE 10-5 at 2.) Ms. McEntee urges that she removed the term "institute" from the proposed order

3

out of her belief that Plaintiff' suit was filed *before* Defendant's bankruptcy petition. (DE 46 at 2-3.)

On August 7, 2015, the New Jersey bankruptcy court entered the parties' stay relief order, which states in relevant part:

> [I]t is ORDERED that the automatic stay is vacated to permit [Cox] to resume and prosecute to conclusion the civil action identified specifically as:
>   <u>Coy G. Cox, Jr. v. Specialty Vehicle Solutions, LLC,</u>
>   Civil Action No.: 15-CI-00040, Commonwealth of Kentucky,
>   Letcher Circuit Court
> only to permit [Cox] to seek to liquidate the claims for recovery made against [SVS]… provided… that [Cox] shall limit any claim for recovery… to the extent of any available and applicable insurance coverage.

(DE 10-5) *Cox*, 715 F. App'x at 444-45. On August 13, 2015, Defendant entered a notice advising the state court of the bankruptcy judge's decision to lift the automatic stay "for the purposes of allowing the Plaintiff to pursue insurance proceeds only." (DE 1-3 at 1.)

On August 24, 2015, Defendant removed the action to this Court (DE 1), and on September 10, 2015, filed a motion to dismiss Plaintiff's complaint (DE 10). Defendant argued, first, that Plaintiff's suit must be voided since it had been filed in violation of the automatic stay; second, that equity does not justify allowing Plaintiff to proceed with his claims; and third, even though the bankruptcy court granted stay relief, Plaintiff's claim was nonetheless time barred. (DE 10.)

The Bankruptcy Code contemplates the situation in which Plaintiff found himself: when a bankruptcy court grants a litigant – including one who just violated the automatic stay – relief from the stay, the law provides a special grace period for him to refile and pursue his claim. Even if the statute of limitations on a claim has run, 11 U.S.C. § 108(c)(2) gives plaintiffs an additional "30 days after notice of the termination or expiration of the stay" to refile a claim. And it appears that is what Plaintiff attempted to do: one day after Defendant filed its motion to dismiss the original suit, Plaintiff filed a new action against Defendant in this Court, docketed at No. 7:15-cv-90-ART-HAI. This second suit, as one might expect, was

4

nearly identical to the first. *Cox*, 715 F. App'x at 445. The second suit having been filed, Plaintiff then responded to Defendant's motion to dismiss the original suit and argued that, despite the purported scrivener's error in his motion for stay relief, the bankruptcy court understood that his state action was filed after Defendant's bankruptcy petition and, thus, that court's order was intended to annul the automatic stay and retroactively validate his suit. (DE 14 at 5-6.) In defense of the second suit, Plaintiff also argued that Defendant had miscalculated his time to re-file the complaint. (DE 14 at 6.)

Defendant moved to dismiss the second suit also, asserting that Plaintiff failed to timely file it within § 108(c)(2)'s 30-day grace period. (DE 25 at 5.) Perhaps having anticipated that Plaintiff would attempt to refile, Defendant had argued in his initial motion to dismiss that Plaintiff, thanks to the special exception in the Bankruptcy Code, could have refiled his complaint by September 8, 2015 without having run afoul of the statute of limitations – but he did not do so. (DE 10 at 5-6.) Plaintiff argued that the 30-day period began to run on August 13, 2015 (when Defendant filed notice of the lifting of the stay) instead of August 7, 2015 (when the bankruptcy court entered its relief order), thus making his September 11, 2015 refiled suit timely. (DE 14 at 6.)

On November 18, 2015, then-District Judge Amul Thapar ruled on both of Defendant's motions to dismiss. (DE 25; DE 26.) Judge Thapar dismissed Plaintiff's initial lawsuit because it was filed in violation of the automatic stay. (DE 25.) In doing so, Judge Thapar refused to invoke the equitable exception in *Easley*, 990 F.2d. (DE 25 at 3-5.) Judge Thapar also dismissed the second action, No. 7:15-cv-90-ART-HAI, finding that Plaintiff did not file it within the appropriate time span. (DE 25 at 5-6.) Judge Thapar noted that § 108(c)(2)'s 30-day grace period was triggered on August 7, 2015 – the day the order was entered – because that was when Plaintiff first obtained actual notice of the stay relief. (DE 25 at 5-6.)

5

Apparently unhappy with these results, Plaintiff filed identical motions to alter or amend the judgment pursuant to FED. R. CIV. P. 59(e). (DE 29; DE 36 at 1.) Judge Thapar denied both, and the appeal to the Sixth Circuit followed. (DE 36; DE 37.) While his appeal was pending, Plaintiff petitioned the bankruptcy court to clarify the stay relief order, but that court declined the invitation to do so. *Cox*, 715 F. App'x at 446.

The Sixth Circuit determined that Judge Thapar properly dismissed Plaintiff's second suit as untimely. *Id.* at 449-50. Specifically, the three-judge panel unanimously agreed with Judge Thapar's conclusion that § 108(c)(2)'s 30-day grace period began to run the moment Plaintiff received actual notice that the automatic stay had been lifted – *i.e.*, when the bankruptcy court entered the stay relief order. *Id.*

The court was divided on Plaintiff's first suit. In a split decision, a majority of the panel decided that dismissal was improper because the district court failed to address whether the "stay relief was intended to be retroactive, or merely prospective." *Id.* at 448.[2] While the majority concluded that the stay relief order was ambiguous, it declined "to attempt to ascertain what the agreed order was intended to execute for the first time on appeal." *Id.* at 448-49.[3] Instead, the case was remanded for this Court to "glean[]" Plaintiff and Defendant's intent when they submitting the stay relief order to the bankruptcy court. *Id.* Judge Clay opposed the majority's decision to remand Plaintiff's initial suit, observing that

---

[2] As Judge Clay's dissent explained, 11 U.S.C. § 362(d) empowers bankruptcy judges with discretion that enables them "to permit [an] order to operate retroactively, thereby validating actions taken by a party at a time when the party was unaware of the stay. Therefore, a bankruptcy court's equitable decision annulling a stay can have the effect of retroactively validating a lawsuit, which was filed after an automatic stay was in place, and thereby allowing it to proceed." *Cox*, 715 F. App'x at 451 (Clay, J., dissenting) (citations, internal quotation marks, and brackets omitted).

[3] As the majority opinion held, the stay relief order's "operative language – 'the automatic stay is vacated to permit [Cox] to resume and prosecute to conclusion' his Kentucky state-court suit – implies that the automatic stay will no longer be a barrier to Cox's claims, and uses the word 'vacate[],' rather than 'terminate,' suggesting that the stay order might have been nullified, *see Vacate*, BLACK'S LAW DICTIONARY (10th ed. 2014); however, the order does not expressly grant retroactive relief by using the words 'retroactive' or 'annulled.'" *Cox*, 715 F. App'x at 448 (brackets in original).

6

"[r]emand would accomplish little more than the needless prolongation of this litigation and all but ensures a future appeal on the same issue currently before the [Sixth Circuit panel]." *Id.* at 450 (Clay, J., dissenting).[4]

On remand, the undersigned held a teleconference and gave the parties 60 days to conduct discovery. (DE 45.) The parties then submitted a series of affidavits. Plaintiff submitted his own affidavit, along with those from his personal injury attorneys, Mr. Daly and James Ryan Turner. (DE 47; DE 48; DE 49.) Defendant submitted affidavits from its personal injury attorney, Susan L. Maines, and its bankruptcy attorney, Ms. McEntee. (DE 50; DE 46). After receiving the affidavits, the Court conducted a second teleconference, heard from the parties, and ordered them to submit cross-briefs on the issue of intent within 28 days; no responses or replies were permitted. (DE 51.)

On August 21, 2019, the Court granted Defendant's motion for summary judgment. (DE 54; DE 55).[5] The Court determined that it would rely on evidence of the intent of the parties who negotiated and drafted the stay relief order – Mr. Levy and Ms. McEntee, the bankruptcy attorneys. (DE 54 at 10.) The Court found that there was no evidentiary basis on which to accept Plaintiff's argument that Mr. Levy's language in the motion for stay relief – which unequivocally stated that the state civil suit was a pre-petition action – constituted a

---

[4] Judge Clay's dissent is worth discussing further. Upon review, he concluded that the bankruptcy court's order did not grant Plaintiff retroactive relief. In reaching this conclusion, Judge Clay focused on the intent of the bankruptcy judge and ignored the intent of Cox and SVS, the parties who drafted the order. He reasoned that an agreed order often represents a compromise, and not the true intent of the parties. *Cox*, 715 F. App'x at 452. (Clay, J., dissenting). And because Plaintiff's motion for stay relief branded his state civil suit as a pre-petition action and did not include terms such as "annul" or "vacate," Judge Clay determined that Defendant's interpretation was the correct one, and that "[t]he bankruptcy court's treatment of the matter supports SVS's contention that the bankruptcy judge never intended the allowance of a lawsuit filed after the automatic stay was in place." *Id.* at 453 (Clay, J., dissenting). Lastly, Judge Clay noted the extraordinary nature of retroactive stay relief and opined that any ambiguity should be interpreted against Plaintiff, the party seeking relief. *Id.* at 453 (Clay, J., dissenting).

[5] Because the Court considered matters outside of the pleadings, it converted Defendant's motion to dismiss into a motion for summary judgment under FED. R. CIV. P. 56. (DE 54 at 6.)

7

scrivener's error. (DE 54 at 10.) In her affidavit, Ms. McEntee claimed that, based on the language contained in the motion for stay relief submitted by Mr. Levy, she genuinely believed that Plaintiff's state civil suit was filed before the bankruptcy petition, and that she would have objected in a different manner had she known that Plaintiff was seeking retroactive relief. (DE 54 at 10.) The Court ruled that the only possible conclusion which the evidence allows to be drawn was that both bankruptcy attorneys believed that Plaintiff's state civil suit was filed before the bankruptcy petition and, since such a suit would not need to be retroactively reinstated, they therefore did not intend for the suit to be retroactively reinstated. (DE 54 at 10-11.)

On September 18, 2019, Plaintiff filed a motion under FED. R. CIV. P. 59(e) to alter or amend the Court's August 21, 2019 judgment. (DE 56.) Plaintiff argues, first, that it was clear error and manifestly unjust for the Court to have relied only on the intent of the bankruptcy attorneys; second, that, since the stay relief order was procured through misrepresentation, the Court failed to use the appropriate standard of proof; and third, that it is clear error and manifestly unjust that Plaintiff is held accountable for alleged acts and omissions of his counsel but that Defendant is not. (DE 56.)

## Analysis

**I. Standard**

To prevail on a motion to alter or amend a judgment under FED. R. CIV. P. 59(e), a party must show that there has been "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citation omitted). A motion under Rule 59 does not allow parties to reargue their case or to raise new arguments which could, and should, have been raised before. *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010). "The purpose of Rule 59(e) is to allow the

district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citations and internal quotation marks omitted).

## II. Discussion

Plaintiff argues, first, that this Court's August 21, 2019 order "erroneously applies the holding in *In re Couch*[, 704 F. App'x 569, 575 (6th Cir. 2017)] to justify ignoring Cox's intent and to rely solely on the intent of the bankruptcy attorneys." (DE 56 at 3.) This argument will not compel the Court to alter or amend its judgment. As an initial matter, Plaintiff misinterprets the Court's citation to *Couch*. In that case, the Sixth Circuit reaffirmed the well-established principle that "[l]itigants are held accountable for the acts and omissions of their chosen counsel." *Id.* (citations and internal quotation marks omitted); *see also Pioneer Inv'r Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). It is this principle upon which the Court relied when it determined that "[w]hat Cox thought to be true… is irrelevant if his beliefs were not adequately communicated to his bankruptcy attorney or if the attorney failed to execute Cox's intentions." (DE 54 at 7.) The law recognizes no consequence to this dichotomy between Plaintiff's intent and the intent of his attorneys – that is what it means for a litigant to be "held accountable" for his counsel's "acts and omissions," as the *Couch* court and others have made clear.

Further, nothing in the Sixth Circuit's opinion in this case suggests otherwise – that the Court on remand should have elicited and considered Plaintiff's intent specifically and as independent of his counsel's, in what would be an apparent contravention of the well-established principles of the attorney-client relationship. For example, the majority opinion concluded that determining the stay relief order's purpose involves gleaning the parties'

intent because "the *parties* drafted the order in question." *Cox*, 715 F. App'x at 448 (emphasis in original). Coy G. Cox, Jr. did not draft the order in question – the attorneys did, with Plaintiff's counsel working on his behalf and representing his interests and intentions. (DE 49 at 2.) The Court relying on evidence that would elucidate the intent of the individuals who drafted the stay relief order was not a "clear error of law" sufficient to grant Plaintiff's Rule 59 motion.

Plaintiff next argues that, since the Court found that "the bankruptcy attorneys were both under the impression that Cox's civil suit was filed before SVS's bankruptcy petition," "then the agreed order was obtained by misrepresentation." (DE 56 at 4.) Having accepted his own premise that the agreed order was obtained by misrepresentation,[6] Plaintiff proceeds to argue that "a party trying to avoid the effect of an order based on an argument that it was procured by fraud or misrepresentation has to meet a high burden," and that Defendant has failed to meet that burden. (DE 56 at 4-5.) This theory cannot bring Plaintiff relief under Rule 59 since it represents a new line of argument that could have been raised earlier. *See Leisure Caviar*, 616 F.3d at 616. It would not be a correction of the Court's "own errors" if it were to resolve whether the nature of the parties' misunderstanding about the agreed order means that the order was obtained by misrepresentation. *See Howard*, 533 F.3d at 475. Therefore, the Court will decline to consider this issue on a Rule 59 motion.

Plaintiff's final point is not entirely clear. In its simplest form, Plaintiff's argument seems to be that it would be unjust for the Court to hold Plaintiff accountable for the acts and omissions of his counsel but not to hold Defendant similarly. (DE 56 at 5.) More specifically, Plaintiff seems to argue that by ruling in favor of Defendant, the Court unfairly excused

---

[6] Although Plaintiff never makes clear his definition of "misrepresentation," it is probably wrong. *See Misrepresentation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act or an instance of making a false or misleading assertion about something, usu. with the intent to deceive.").

10

Defendant's counsel's misunderstanding about the timing of the state civil suit. (DE 56 at 5.) Upon its review of the briefings and upon reconsideration of its judgment, the Court finds no cogent basis for Plaintiff's argument here. The Court agrees with Defendant that this argument appears to be little more than a camouflaged attempt to relitigate the motion for summary judgment. (DE 57 at 5.) Especially telling is Plaintiff's reply brief's treatment of this issue, where he asserts in the relevant part that "[i]t is simply not credible to argue that both lawyers simply did not know" that the first two digits in a case number signal the year in which that case was filed. (DE 58 at 1-2.) Because understanding what the parties believed helps to inform what sort of relief they intended the agreed order to provide, this claim seems to fall squarely within the question on which the Court was directed to hear arguments and evidence and ultimately resolve.

## **Conclusion**

Accordingly, the Court hereby ORDERS that Plaintiff's motion to alter or amend the Court's judgment (DE 56) is DENIED.

Dated December 17, 2019

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY